**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-24302-KMM

JASON PARKER,

     Plaintiff,

v.

B.W. BOATWORKS, INC. d/b/a
BLACKWATER SPORTFISHING
BOATS, INC., *et al.*,

     Defendants.

_____/

## <u>ORDER</u>

THIS CAUSE came before the Court upon the Motion to Dismiss Plaintiff's First Amended Complaint and to Strike Punitive Damages (the "Plantation Motion" or "Pl. Mot.") (ECF No. 126) filed by Defendants Plantation Boat Mart and Marina, Inc. and Plantation Boat Mart Brokerage, Inc. (together, "Plantation" or "Plantation Defendants"), the Motion to Dismiss Plaintiff's First Amended Complaint (the "Blackwater Motion" or "Bl. Mot.") (ECF No. 134) filed by Defendants B.W. Boatworks, Inc. d/b/a Blackwater Sportfishing Boats, Inc. ("B.W. Boatworks, Inc."), Blackwater Sportfishing Boats, Inc., and Eugenio Uriarte ("Uriarte") (collectively, "Blackwater" or "Blackwater Defendants"), and the Notice of Joinder in Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (the "Joinder Motion" or "Join. Mot.") (ECF No. 138) filed by Defendant Boats Direct, LLC ("Boats Direct") (collectively, the "Motions"). In connection with the Plantation Motion, Plaintiff Jason Parker ("Plaintiff") filed a Response (the "Plantation Response" or "Pl. Resp.") (ECF No. 139) and Plantation filed a Reply (the "Plantation Reply" or "Pl. Reply") (ECF No. 145). In connection with the Blackwater Motion, Plaintiff filed a Response (the "Blackwater Response" or "Bl. Resp.") (ECF No. 140) and Blackwater filed a Reply (the

"Blackwater Reply" or "Bl. Reply") (ECF No. 144).  In connection with the Joinder Motion, Plaintiff filed a Response (the "Joinder Response" or "Join. Resp.") (ECF No. 142).  Boats Direct did not file a reply in support of its Joinder Motion, and the time to do so has passed.  The Motions are now ripe for review.  As set forth below, the Court GRANTS the Motions.[1]

## I.      BACKGROUND[2]

On October 14, 2021, Plaintiff purchased a 2022 Blackwater 41 Tournament Edition Center Console Sportfishing Boat (the "Vessel") from Plantation.  *See* FAC ¶ 16.  Plaintiff alleges that Blackwater manufactured the Vessel, Brunswick designed and manufactured the Vessel's engines, and, upon information and belief, Boats Direct funds, supports, and manages Blackwater's brand and "exercises dominion and control over Plantation through either funding or direct management."  *See id.* ¶¶ 17–18, 21–22.  On or about November 10, 2021, Plaintiff alleges that Blackwater "issued a manufacturer's warranty that warrants that the Vessel shall be free from any structural defects due to substandard materials and workmanship for a period of ten (10) years," excluding the Vessel's engines.  *See id.* ¶ 23.  Plaintiff further alleges that, on the same date,

---

[1] Plantation filed a Notice of Filing Affidavit in Support of the Plantation Motion (the "Affidavit") (ECF No. 137) and the Blackwater Motion relies on the Declaration of Eugenio "Eugene" Uriarte Pursuant to 28 U.S.C. § 1746 (the "Declaration") (ECF No. 28-1), which was filed in support of Blackwater's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 11).  *See* Bl. Mot. at 6, 8.  Plaintiff argues that the Court should not consider the Affidavit and Declaration when adjudicating the Plantation and Blackwater Motions.  *See* Pl. Resp. at 5; Bl. Mot. at 8.  However, the Court need not resolve this dispute where it finds that the FAC is an impermissible shotgun pleading and therefore does not consider the Affidavit or the Declaration herein.

[2] The following facts are taken from Plaintiff's First Amended Complaint (the "FAC") (ECF No. 113) and are accepted as true for purposes of ruling on the Motions.  *See MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022).  They are construed in a light most favorable to Plaintiff, the non-moving party.

The FAC brings claims against Plantation, Blackwater, Boats Direct, and Brunswick Corporation d/b/a Mercury Marine d/b/a Mercury Racing ("Brunswick") (collectively, "Defendants").  *See generally* FAC.  The Court refers to Plantation, Blackwater, and Boats Direct as "Movants" throughout this Order.

Brunswick issued a warranty "that the engines shall be free from any structural defects due to substandard materials and workmanship for a period of [t]hree (3) years." *Id.* ¶ 24.

On November 28, 2021, Plaintiff alleges that Plantation's agent, Captain Tim Nichols, operated the Vessel with Plaintiff onboard "in the open and navigable Mississippi waters" when "two of the four [m]ercury 450R [e]ngines catastrophically failed when the steering arm(s) came off, the mid/lower unit snapped off the upper [e]ngine, and one prop and skeg broke off, causing the Vessel to 'spin out' at high speed" (the "First Incident"). *See id.* ¶ 25. Plaintiff alleges that "it was clear" upon removing the Vessel from the water that "Plantation and/or Blackwater and/or Brunswick had installed the engine lower drives incorrectly, or, alternatively the drives were incorrectly manufactured, designed or assembled by Brunswick." *Id.* ¶ 28. Plaintiff alleges that he suffered bodily injury from the First Incident and has consequently developed "significant and permanent range of motion damage to his extremities that now substantially interfere[s] with his profession as a pediatric dental specialist." *See id.* ¶ 32.

The day of the First Incident, Plaintiff notified Blackwater and Plantation of the same, demanding that they "fix any and all damage to the Vessel." *See id.* ¶ 37. Plaintiff alleges that "Plantation and/or Blackwater initially refused to assist," and that he was thus required to retain counsel "to compel Plantation and/or Blackwater [to] honor [their] warranty obligations." *See id.* ¶¶ 38, 40. On March 28, 2022, Plaintiff and Plantation entered into "a limited repair agreement," pursuant to which Plantation allegedly "agreed to fully repair the Vessel and bring it to a 'like new'" condition. *See id.* ¶ 41. Plaintiff alleges that Plantation completed the repairs on or about June 15, 2022, and certified the Vessel's "seaworthiness and workmanship in all regards." *See id.* ¶¶ 42, 48. Plaintiff further alleges that "Jomar Maysonet, an unlicensed and non-certified individual, employed by Plantation and/or Blackwater and/or Boats Direct, was allowed or

3

instructed" to work on the Vessel's engines without Plaintiff's knowledge or permission and improperly installed "at least one of the lower drives in an 'upside down' manner." *Id.* ¶¶ 43–44. Plaintiff alleges that Plantation "returned the Vessel with smaller, less expensive[,] and mismatched props." *Id.* ¶ 45.

After Plantation repaired the Vessel, Plaintiff used it "a few brief times." *Id.* ¶ 50. Plaintiff thereafter retained Crown Leisure Marine to inspect and service the Vessel, which found that the Vessel's engines "were running in excellent condition." *See id.* ¶¶ 51–55. According to Plaintiff, the mechanic who conducted the inspection and service at Crown Leisure Marine is now employed by Brunswick. *See id.* ¶ 56. Additionally, Plaintiff alleges that he listed the Vessel for sale at $1,199,000.00 at a time when "the market conditions for this type of [boat] were at an all-time high." *Id.* ¶ 58.

On October 29, 2022, Plaintiff was piloting the Vessel from Mississippi to Alabama when it allegedly "took a sharp and unexpected turn (without driver input), diving the bow[—]starboard, down towards the water's surface" (the "Second Incident"). *See id.* ¶¶ 59, 61–62. Plaintiff alleges that the Vessel began to sink and that the Vessel's "guardian mode" activated, effectively rendering the Vessel "dead in the water." *See id.* ¶¶ 67–68. According to Plaintiff, Brunswick installed the guardian mode "programming in its engines as a means to preserve engine parts to avoid the costs and expenses that would be covered under warranty claims and thereby placed [Plaintiff's] life at risk for [its] own profit." *See id.* ¶ 77.

Plaintiff further alleges that a passenger opened the Vessel's bilge hatch during the Second Incident and discovered that the bilge was full of water "not only [because of] the breach[,] but [also due to] inoperative bilge pumps" that were "clogged with manufacturing materials negligently left in the hull by . . . Blackwater and/or Plantation during the manufacturing process."

*See id.* ¶¶ 69–70.  Plaintiff piloted the Vessel back to shore, alleging that "the Vessel's forward bow thruster, bow thruster mounting components, and the area of the hull immediately surrounding the bow thruster experienced structural failure [during the Second Incident] as a result of a manufacturer's defect, defect in installation and/or negligent repair of the damage from" the First Incident.  *See id.* ¶¶ 79, 81, 85–86, 88–89, 92.  Plaintiff claims that he injured his wrist and thumb during the Second Incident, which has negatively impacted his employment.  *Id.* ¶¶ 63 & n.3.

On April 24, 2023, Plaintiff shipped the Vessel at his own expense to Blackwater's factory in Florida for repairs and alleges the following issues related thereto:  (1) Blackwater's agents intentionally placed a shipping tow strap "on the Vessel's damaged bow thruster area" and further damaged the Vessel while attaching the strap to a forklift; (2) on August 21, 2023, Blackwater accepted the Vessel under its warranty, representing that it would return the Vessel "up to spec" and provide a new MSO[3]; (3) "[a]s part of the [a]greement to provide warranty work, Blackwater was to allow [Plaintiff] and/or his agent(s) to periodically inspect the repair process" and send Plaintiff progress photographs, but thereafter denied Plaintiff and his agent access to inspect the Vessel and failed to provide progress photographs; (4) "Blackwater and/or Plantation and/or Boats Direct knowingly allowed the engines to sit outside" for over one year and four months, and Blackwater "refused to refurbish or remediate the [resulting] environmental damage"; (5) "Blackwater and/or Plantation refused to replace/repair any engines, electronics and/or other components that were damaged as a result of the" Second Incident; and (6) "Blackwater knowingly and intentionally sought to harm" Plaintiff's contract with a buyer, who agreed to purchase the Vessel if it were returned in "like new condition."  *Id.* ¶¶ 98–104, 107–08, 115, 119, 122–23, 126,

---

[3]  Plaintiff does not define "MSO" in the FAC, but the Court understands the acronym to refer to a Manufacturer's Statement of Origin.

128.

Plaintiff also alleges that on or about June 10, 2024, "Blackwater claimed that the Vessel's hull had been fully repaired, was ready to be assembled[,] and further represented that the engines were still usable," but that Blackwater placed a boat cap over the hull thereafter, concealing the work it had done without inspection. *See id.* ¶¶ 124, 130–31. Consequently, Plaintiff alleges that "Blackwater and/or Plantation and/or Boats Direct used old/damaged/inferior parts leading to additional issues with the Vessel." *Id.* ¶ 132.

Then, on June 15, 2024, Plaintiff requested a "sea trial" and inspection but Blackwater initially refused, asserting "that the engines were not ready as previously claimed." *Id.* ¶¶ 133–34. Plaintiff further alleges that on or about August 14, 2024, Uriarte "made public statements" to Plaintiff's agent that Plaintiff "had a history of wrecking numerous boats" and had also wrecked the Vessel. *Id.* ¶¶ 135–36. Plaintiff alleges that Defendants eventually permitted a sea trial on the condition that Plaintiff not operate the Vessel. *See id.* ¶ 137. According to Plaintiff, a Plantation principal operated the Vessel during the first sea trial, with "Blackwater and/or Plantation and/or Boats Direct conspir[ing] to conceal leaks in the Vessel by turning off circulation valves," which Plaintiff and his agent discovered thereafter. *Id.* ¶¶ 137–39. Plaintiff also alleges that he learned Blackwater would not issue a new Hull Identification Number ("HIN") or MSO, thereby rendering the Vessel unregistered and unsellable. *See id.* ¶ 140. Plaintiff alleges that he "provided a punch list of repairs that needed to be completed on the Vessel[,] including but not limited to the HIN issue, water leak issue[,] and corrosion issues identified during the" first sea trial, but "Blackwater and/or Plantation repaired the one leaking hose" and refused to address the remaining repair requests. *Id.* ¶¶ 142–43.

During the second sea trial, Plaintiff alleges that: (1) "Defendants . . . refused to bring the

6

Vessel up to speed for more than a few seconds and ignored [his] requests to put the engines under full power"; (2) "Blackwater and/or its agent Plantation refused and/or ignored [his] questions about the Vessel or its engines in a callous manner designed to harm" him; and (3) Plantation's agent refused to take the Vessel farther offshore, thereby "never allowing the engines to heat up or truly test whether the engine or Vessel would fail." *Id.* ¶¶ 146–49. Following the second sea trial, Plaintiff alleges that he was instructed that he had to take possession of the Vessel or incur storage fees. *See id.* ¶ 150. Upon taking possession, Plaintiff "realized that Blackwater and/or Plantation had again refused/failed to install the correct" HIN, resulting in Plaintiff piloting "the unlawful/unlicensed Vessel" to "a local mechanic [in Pompano Beach] who was standing by . . . to begin engine inspections and repair." *Id.* ¶¶ 151–52.

Plaintiff alleges that as he piloted the Vessel to Pompano Beach, two of the "engines began to exhibit serious mechanical issues," "the Vessel clearly failed to drive properly," and "a strong smell of rotten eggs" permeated the Vessel's cabin. *See id.* ¶¶ 153–54. Plaintiff further alleges that Ron McClean, "a former employee of Blackwater" onboard at the time, suspected that the Vessel's electronic system "had been damaged and/or installed defectively" and thus shut down the Vessel's power system to avoid a fire. *See id.* ¶¶ 156–60.

Plaintiff alleges that: (1) "Blackwater and/or Plantation and/or Boats Direct had used old, corroded parts, components and wiring"; (2) Blackwater and Plantation returned the Vessel "with the [e]ngines leaking oil (outer starboard), electrical faults throughout the Vessel causing battery damage, voltage issues on at least two [e]ngines, rpm issues," and abnormal water pressure; (3) Blackwater and/or Plantation concealed known electrical issues "to further harm [Plaintiff] and avoid having to repair the same"; and (4) "Blackwater and/or Plantation and/or Boats Direct conspired/colluded to return" an "uninsurable, unsellable[,] and un-registered Vessel." *See id.* ¶¶

161–65, 170.  Plaintiff also alleges that he identified further damage to the Vessel, including:  (1) a saw-blade cut in the hull; (2) damage to the Vessel's logos; and (3) improper installation of the engines, lowers, and propellers.  *See id.* ¶¶ 176–82.  Moreover, Plaintiff claims that "Blackwater and/or Plantation and/or Boats Direct's conduct has been openly hostile in a manner which shocks the conscience."  *Id.* ¶ 183.

Upon arriving to the mechanic in Pompano Beach, Plaintiff "discovered that one or more . . . agents of Blackwater and/or Plantation and/or Boats Direct had, upon information and belief, contacted the mechanic and told him [Plaintiff] was attempting to involve them in some form of improper conduct (i.e., insurance fraud) and to not work on the Vessel."  *Id.* ¶ 184.  According to Plaintiff, that mechanic, along with other mechanics in the area, refused to work on the Vessel "due to information that they had received," and Plaintiff alleges that "[i]t was clear that one or more of [Movants], or their agents . . . had called the local area mechanics and told them to also not work on [the] Vessel in an effort to further harm [Plaintiff]."  *See id.* ¶¶ 185–87.  Plaintiff therefore transported the Vessel to Bent Marine in Louisiana for repairs.  *See id.* ¶ 188.

Plaintiff alleges that Bent Marine conducted a proper sea trial, in which the Vessel's engines "sounded numerous alarms and began to fail," indicating that "Blackwater and/or Plantation had concealed the same during their [s]ea [t]rials to force [Plaintiff] to accept a clearly defective and unsafe" boat.  *Id.* ¶ 191.  Bent Marine allegedly also "identified numerous electrical issues and connection issues which had been concealed by . . . Blackwater and/or Plantation and/or Boats Direct."  *Id.* ¶ 190.

Plaintiff alleges that because of "Blackwater and/or Plantation and/or Boatworks and/or Brunswick's acts and/or omissions" he has been unable to sell the Vessel at any price.  *Id.* ¶ 192.  Plaintiff claims that the "Vessel now has a significantly depressed value" and that he "does not

believe he will be able to sell the Vessel for any reasonable price due to all of the issues which must be disclosed to any potential/interested [b]uyer." *Id.* ¶ 193.  Plaintiff further alleges that he has "sustained significant and permanent injuries to his head, neck, hand[,] and leg causing significant hardship [and] loss of enjoyment of life, and which has also impacted [Plaintiff's] ability to practice as a pediatric dentist." *Id.* ¶ 194.

On November 18, 2024, Plaintiff filed his initial Complaint in the Southern District of Mississippi.  *See generally* (ECF No. 1).  On September 19, 2025, the matter was transferred to this Court upon the Parties' Joint Ore Tenus Motion to Transfer Case.  *See generally* (ECF Nos. 75, 77).  On November 11, 2025, Plaintiff filed the FAC with leave of Court, asserting:  (1) Count I for products liability resulting in personal injury and property damage (failure to warn) against Brunswick; (2) Count II for products liability resulting in personal injury and property damage (manufacturing defect) against Brunswick; (3) Count III for products liability resulting in personal injury and property damage (failure to warn) against Uriarte and Blackwater; (4) Count IV for products liability resulting in personal injury and property damage (manufacturing defect) against Uriarte and Blackwater; (5) Count V for negligence and/or gross negligence against Brunswick, Blackwater, Plantation, and Boats Direct; (6) Count VI for negligent and/or grossly negligent repair resulting in personal injury and property damage after the First Incident against Blackwater, Plantation, and Boats Direct; (7) Count VII for negligent and/or grossly negligent repair resulting in personal injury and property damage after the Second Incident against Blackwater, Plantation, and Boats Direct; (8) Count VIII for breach of express warranty against Blackwater; (9) Count IX for breach of express warranty against Plantation and Boats Direct; (10) Count X for breach of express warranty against Brunswick; (11) Count XI for breach of implied warranty of merchantability against Blackwater; (12) Count XII for tortious interference against Uriarte,

9

Blackwater, Plantation, and Boats Direct; (13) Count XIII for breach of duty of good faith and fair dealing against Uriarte, Blackwater, Plantation, and Boats Direct; (14) Count XIV for breach of contract against Uriarte and Blackwater; (15) Count XV for slander and libel against Uriarte, Blackwater, and Plantation; and (16) Count XVI for violation of the Magnuson-Moss Warranty Act against Blackwater, Plantation, and Brunswick. *See* Pet. ¶¶ 226–540; *see also* (ECF No. 112).

Now before the Court are the Plantation and Blackwater Motions, which seek to dismiss the FAC and strike Plaintiff's demand for punitive damages. *See generally* Pl. Mot.; Bl. Mot. Also before the Court is the Joinder Motion, which joins and adopts certain arguments set forth in the Plantation and Blackwater Motions. *See generally* Join. Mot.

## II.      LEGAL STANDARD

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) "is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (internal citation and quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted). The court takes the plaintiff's factual allegations as true

and construes them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007).  A pleading that offers "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### B.  Motion to Strike

Federal Rule of Civil Procedure 12(f) authorizes a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on its own or by motion.  Fed. R. Civ. P. 12(f).  "The Court has broad discretion when considering a motion to strike."  *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-61670-CIV, 2013 WL 4496510, at *2 (S.D. Fla. Aug. 22, 2013) (citation omitted).  However, striking "is a drastic remedy to be resorted to only when required for the purposes of justice" and when "allegations have 'no possible relation to the controversy.'"  *Bledsaw v. Carnival Corp.*, No. 15-23647, 2015 WL 9594296, at *1 (S.D. Fla. Dec. 30, 2015) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)).  Nevertheless, it may be appropriate where there is no possible basis in either law or statute for the requested relief.  *See Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.*, 872 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012).

### III.   DISCUSSION

In the Plantation Motion, Plantation seeks dismissal of the FAC as an improper shotgun pleading and argues in the alternative that Counts V–VII, XII–XIII, and XV fail to state a claim.

11

*See generally* Pl. Mot.  Plantation also moves to strike Plaintiff's demand for punitive damages, arguing that the FAC "contains no allegations that would support such relief."  *See id.* at 13.  In the Blackwater Motion, Blackwater argues that the FAC should be dismissed as a shotgun pleading and, in the alternative, that Counts III–VIII and XI–XVI fail to state a claim.  *See generally* Bl. Mot.  The Blackwater Motion also adopts the Plantation Motion's arguments as to striking punitive damages.  *See id.* at 7 n.7.

In the Joinder Motion, Boats Direct joins and adopts the Plantation and Blackwater Motions' arguments that the FAC constitutes an impermissible shotgun pleading and that Counts XII–XIII fail to state a claim.  *See* Join. Mot. at 2–3.  Boats Direct also joins and adopts:  (1) the Plantation Motion's arguments "that the allegations in Counts V[–]VII fail to establish conduct that would support punitive damages and must be stricken"; and (2) the Blackwater Motion's arguments that Counts V–VII should be dismissed as Boats Direct "did not sell the subject [V]essel to Plaintiff, did not perform any repairs on the [V]essel, and was never in physical possession of the [V]essel."  *See id.* at 2.  In opposition, Plaintiff argues that the FAC is not a shotgun pleading and that the Counts alleged against Movants are sufficiently pled.  *See generally* Pl. Resp.; Bl. Resp.; Join. Resp.  The Court addresses these arguments in turn.

### A.  Joinder Motion

As discussed above, the Joinder Motion seeks to join and adopt certain arguments raised in the Plantation and Blackwater Motions.  *See generally* Join. Mot.  Boats Direct contends that while Movants' counsel conferred regarding the possibility of filing a joint motion to dismiss, differing positions and response deadlines rendered a joint filing impracticable.  *See id.* at 1–2.  Boats Direct thus filed the Joinder Motion to "notify [the] Court to the extent [it was] able to join on any particular arguments."  *See id.* at 2.  Accordingly, the Joinder Motion is GRANTED.  The

arguments in the Plantation and Blackwater Motions set forth above are deemed adopted by Boats Direct.

### B.  Shotgun Pleading

The Motions argue that the FAC constitutes a shotgun pleading because it impermissibly: (1) incorporates all 225 paragraphs of background allegations into each Count; and (2) fails to distinguish Defendants' respective acts or omissions.  *See* Pl. Mot. at 4–5; Bl. Mot. at 4–5; Join. Mot. at 2.  In response, Plaintiff argues that the FAC is not a shotgun pleading "because it gives . . . Defendants adequate notice of the claims against them."  *See* Pl. Resp. at 5; Bl. Resp. at 4; Join. Resp. at 1.

Complaints that violate Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often and widely referred to as shotgun pleadings.  *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015); *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008); *Weinstein v. City of N. Bay Vill.*, 977 F. Supp. 2d 1271, 1285 (S.D. Fla. 2013).  Courts in this Circuit have consistently found the use of such pleadings to be an impediment to the efficient administration of the judicial system.  *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125–28 (11th Cir. 2014) (discussing "the persistence of the shotgun pleading problem"); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently.").

In *Weiland*, the Eleventh Circuit sought to provide clarity and consistency to the issue of shotgun pleadings by outlining the four categories where these pleadings often fall within:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings.  The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that

13

came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

792 F.3d at 1321–23. The *Weiland* court explained the "unifying characteristic of . . . shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Here, the FAC falls within the second category of shotgun pleading. Specifically, all sixteen Counts uniformly incorporate the first 225 paragraphs of the FAC, which comprise the following sections: Parties; Jurisdiction & Venue; and Factual Background. *See* FAC at 1–2, 4; *see also id.* ¶¶ 226, 247, 275, 294, 310, 321, 330, 340, 364, 390, 395, 419, 437, 458, 475, 483. If all incorporated allegations were relevant to each Count, the FAC might not fall within the second category of shotgun pleading. However, as the FAC incorporates the same factual allegations into all Counts asserted against varying combinations of Defendants, despite those Counts advancing distinct legal theories with differing elements, the Counts necessarily "include factual allegations that are immaterial to the underlying causes of action." *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (citations omitted).

The FAC also falls within the fourth category of shotgun pleading. First, the FAC begins its "Factual Background" section by defining Blackwater Defendants as "Blackwater" collectively unless "specifically identified." *See* FAC ¶ 17. The FAC then alleges Counts III–IV and XII–XV against both "Uriarte" and "Blackwater." *See id.* at 43, 45, 60, 63, 66, 68. As Uriarte is part of the

14

Blackwater Defendants collective, it is unclear which entity or entities comprise "Blackwater" in these Counts. Additionally, while Count IX is alleged against Plantation and Boats Direct for breach of express warranty, Count IX also alleges claims against Blackwater. *See, e.g.*, *id.* ¶ 389 ("As a result of Blackwater and/or Plantation and/or Boats Direct's breach of warranty, Plaintiff has incurred damages in amounts to be shown at trial."). These inconsistencies fail to provide Blackwater Defendants with "adequate notice of the claims against" them. *See Weiland*, 792 F.3d at 1323.

Second, the allegations in Counts III–IX and XI–XVI are intertwined among Defendants and fail to delineate each Defendant's individual involvement. *See* FAC at 43–75; *see also Rattner v. 1809 Brickell LP*, No. 1:21-cv-23426-KMM, 2022 WL 4770402, at *4 (S.D. Fla. Aug. 23, 2022) (finding shotgun pleading where complaint did not "delineat[e] how each [d]efendant [was] involved"). Plaintiff argues that this lack of specificity is because "[i]t would be impossible at this phase of litigation for [him] to identify the specific inner working business relationships between . . . Defendants and their specific involvement in his injuries." *See* Bl. Resp. at 7; *see also* Pl. Resp. at 7. While discovery may clarify Defendants' respective roles, the FAC nevertheless fails to provide sufficient factual allegations distinguishing each Defendant's alleged conduct or explaining why such differentiation is presently impossible. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014) ("Civil pleadings are supposed to mark the boundaries for discovery; discovery is not supposed to substitute for definite pleading."); *Allen v. Lyons & Farrar, P.A.*, No. 4:19CV578-MW/MJF, 2020 WL 10728693, at *3 (N.D. Fla. July 22, 2020) ("Plaintiff contends he cannot make his claims more specific because discovery is ongoing and he does not yet know who might be responsible for what. This does not, however, excuse [p]laintiff from complying with the Federal Rules of Civil Procedure." (internal citation omitted)).

In some cases, the "fact that defendants are accused collectively does not render the complaint deficient." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). However, that will only be the case where it is reasonable to conclude "that all defendants are responsible for the alleged conduct." *Id.*; *see also KVC Ests. IV, LLC v. Lopez*, No. 1:23-cv-24891-JB, 2025 WL 662657, at \*4 (S.D. Fla. Feb. 13, 2025) (finding collective pleading improper where "allegations are irreconcilable with the theory that the [d]efendants acted collectively"), *report and recommendation adopted*, 2025 WL 659858 (S.D. Fla. Feb. 28, 2025).

Here, the FAC's overall lack of clarity makes it impossible to determine whether the factual allegations plausibly support the varying combinations of Defendants in the Counts identified above. Specifically, the FAC falls short of alleging the factual basis for Plaintiff's belief that each combination of Defendants participated in the conduct underlying the respective Counts. Instead, such Counts lump Defendants together and rely on generalized "and/or" allegations that fail to delineate each Defendant's specific involvement. Plaintiff "may not adopt a 'plead them all and let the [j]udge sort it out' strategy." *Allen*, 2020 WL 10728693, at \*3. Consequently, Defendants are left without adequate notice of the conduct allegedly attributable to each of them.

Therefore, the Court finds that the FAC violates the *Weiland* standard as to both the second and fourth categories of shotgun pleading. Accordingly, the FAC is dismissed as an impermissible shotgun pleading as to all Counts.

### C. Failure to State a Claim

Because of the pervasive pleading deficiencies in the FAC outlined above, the Court will not take pains to try to decipher what those allegations might mean for the purpose of Movants' failure-to-state-a-claim arguments. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018) (emphasizing importance of dismissing shotgun pleadings where resolution of ill-pled

16

claims "would have been time-consuming and even more of an undue tax on the Court's resources"). However, because Plaintiff will be granted an opportunity to amend, the Court now turns to several issues in the FAC that would need to be addressed upon repleading.

### i.  Count XII:  Tortious Interference

Movants argue that Count XII fails to state a claim for tortious interference.  *See* Pl. Mot. at 10–11; Bl. Mot. at 8–9; Join. Mot. at 2.  Count XII appears to allege two instances of tortious interference:  (1) interference with Plaintiff's efforts to sell the Vessel; and (2) interference with East Coast Marine's[4] survey of the Vessel and the subsequent refusal of other local vendors to work on the Vessel.  *See* FAC ¶¶ 420–36.

As to Plaintiff's efforts to sell the Vessel, Plantation and Blackwater contend that:  (1) the allegations regarding Plantation's knowledge of any contract or business relationship are conclusory; (2) Plaintiff fails to sufficiently allege the existence of a contract; and (3) Plaintiff fails to allege intentional and malicious interference resulting in breach of contract.  *See* Pl. Mot. at 10–11; *see also* Bl. Mot. at 8–9.  Plantation further argues that the allegations concerning the local vendors are speculative.  *See* Pl. Mot. at 11.  Boats Direct joins these arguments and separately contends that Plaintiff fails to state a claim "as he has not established the existence of a relevant contract nor has he pled or alleged facts establishing malicious interference by" Boats Direct.  *See* Join. Mot. at 2.  In response, Plaintiff argues that the FAC sufficiently alleges tortious interference under Florida law.  *See* Pl. Resp. at 12–14; Bl. Resp. at 10–11; Join. Resp. at 1.

To establish a prima facie claim of tortious interference under Florida law, a plaintiff must

---

[4]  The Court presumes that the Pompano Beach mechanic referenced in the FAC is East Coast Marine, but Plaintiff does not clearly allege as much.  *See* FAC ¶¶ 152, 184, 429–30, 444–45, 478. For clarity, the Court refers to this mechanic as East Coast Marine moving forward.  Should Plaintiff file an amended pleading, he must clearly identify the relevant parties and their respective involvement.  *See also, e.g., id.* ¶¶ 431, 447 (alleged storage fees with "Unique Marine").

allege: "(1) the existence of a business relationship or contract; (2) knowledge of the business relationship or contract on the part of the defendant; (3) an intentional and unjustified interference with the business relationship or procurement of the contract's breach by the defendant; and (4) damage to the plaintiff as a result of the interference." *See Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 894 (11th Cir. 2025) (cleaned up and citations omitted).

As to the first instance of interference, the FAC alleges that "Eugenio, Blackwater and/or Plantation and/or Boats Direct, and their agents were well aware that the warranty work being done was for [Plaintiff] to sell the Vessel to a third party" and knew that their actions—including delaying repairs, removing options, and preventing Blackwater from repairing the Vessel "up to spec" and providing "a new MSO"—"would cause [Plaintiff] to either lose the sale or suffer damages by and through additional costs and expenses and/or damages." *See* FAC ¶¶ 420–28.

These allegations do not clearly identify the contract or business relationship with which Movants allegedly interfered. Although the FAC's "Factual Background" section alleges that Plaintiff "had a buyer under contract to purchase the Vessel . . . so long as it was returned in 'like new condition'" and later alleges that Plaintiff "lost another buyer who had agreed to purchase the Vessel for $982,000," Count XII does not specify whether those allegations refer to the same agreement or whether both form the basis of the tortious interference claim. *See id.* ¶¶ 122, 125. Instead, Count XII incorporates by reference the FAC's entire "Factual Background" section and generally alleges interference with Plaintiff's ability to sell the Vessel. *See id.* ¶¶ 419–28. As pled, the Court cannot determine whether the first instance of alleged interference is premised on: (1) a specific contract or business relationship; (2) multiple contracts or business relationships; or (3) a

prospective contractual or business relationship.[5]  Given the FAC's lack of clarity regarding the nature of the alleged relationship, the Court likewise cannot determine whether Plaintiff plausibly alleges Movants' knowledge of the relationship or Movants' interference with the same.  *See Al Rushaid Petroleum Inv. Co.*, 159 F.4th at 894 (citations omitted).

As to the second instance of interference, Plaintiff alleges that he "enlisted East Coast Marine [to] receive the Vessel to conduct an engine survey to determine if any additional repairs were needed," but was later "informed that East Coast Marine had received information about the Vessel and no longer wished to work on the Vessel."  *See* FAC ¶¶ 429–30.  Plaintiff further alleges that "[i]t was then discovered that no local vendor desired to work on the Vessel due to comments that had been made by certain unknown individuals assumed to be one or more of the Defendants."  *See id.* ¶ 432.

First, the FAC inconsistently attributes the second instance of alleged interference to different combinations of Defendants.  As discussed above, Count XII does not identify which Defendants allegedly interfered with Plaintiff's contractual or business relationship with East Coast Marine or the local vendors, instead solely alleging that the statements to the local vendors were "made by certain unknown individuals assumed to be one or more of the Defendants."  *See id.* ¶¶ 429–30, 432.  However, the FAC's "Factual Background" section alleges that "agents of Blackwater and/or Plantation and/or Boats Direct had . . . contacted [East Coast Marine] and told

---

[5]  In the Plantation Response, Plaintiff argues that Count XII alleges "interference between [Plaintiff] and his listing agent who had been attempting to sell the Vessel before" the First Incident.  *See* Pl. Resp. at 12–13.  However, Count XII does not allege interference with a "listing agent," and the paragraph Plaintiff cites in support of that theory describes a listing that allegedly occurred *after* the First Incident, as the paragraph is within a subsection entitled "Repairs to the Vessel as a Result of Incident 1."  *See id.* at 13; FAC ¶ 58.  It is improper for Plaintiff to attempt to introduce this unpled theory for the first time in briefing.  *See Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011).

him [Plaintiff] was attempting to involve them in some form of improper conduct (i.e., insurance fraud) and to not work on the Vessel" and that it "was clear that one or more of the Blackwater and/or Plantation and/or Boats Direct, or their agents" contacted the "local area mechanics and told them to also not work on [the] Vessel." *Id.* ¶¶ 184, 187. In contrast, Count XV alleges that only "Uriarte and Plantation Boat Mart" made statements to East Coast Marine and the local vendors. *See id.* ¶¶ 478–79. As pled and in light of these inconsistencies, the Court cannot determine which Defendants allegedly interfered with Plaintiff's contractual or business relationship with East Coast Marine or the local vendors under Count XII.

Second, to the extent Plaintiff alleges interference with the local vendors, Count XII fails to sufficiently allege the existence of a contract or business relationship with such vendors to sustain a claim for tortious interference. Indeed, merely alleging that Plaintiff contacted unspecified local vendors does not establish "an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). As Plaintiff fails to identify the vendors as well as any understanding or agreement with the same, Plaintiff's allegations amount to a speculative hope of business, which is insufficient to establish a protected business relationship under Florida law. *See St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*, 784 So. 2d 500, 505 (Fla. Dist. Ct. App. 5th Dist. 2001) ("The speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship." (citation omitted)); *see also Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1310 (M.D. Fla. 2025) (holding that allegations regarding "unspecified 'vendors, contractors and subcontractors'" were insufficient to establish a business relationship under Florida law). These deficiencies must be addressed should Plaintiff choose to replead Count XII.

### ii.  Count XV:  Slander & Libel

Plantation and Blackwater also argue that Plaintiff fails to state a claim for slander and libel because Count XV's allegations are speculative and otherwise fail to meet the threshold for defamation under Florida law.  *See* Pl. Mot. at 12–13; Bl. Mot. at 14–16.  Blackwater further argues that the FAC fails to allege how Defendants B.W. Boatworks, Inc. and Blackwater Sportfishing Boats, Inc. are liable for the alleged defamatory statements.  *See* Bl. Mot. at 14.  In response, Plaintiff contends that he has "sufficiently alleged facts to provide [Plantation and Blackwater] with adequate notice of the claim."  *See* Pl. Resp. at 17; Bl. Resp. at 14–15.

"Defamation, which includes libel and slander," is "the unprivileged publication of false statements which naturally and proximately result in injury to another."  *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1257 (S.D. Fla. 2021) (citation omitted).  Under Florida law, a defamation claim requires:  "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory."  *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citation omitted).  Whether a "statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court."  *See Turner*, 879 F.3d at 1262–63 (citations omitted).

A plaintiff may establish defamation through defamation *per se* or defamation *per quod*.  *See Block v. Matesic*, 789 F. Supp. 3d 1131, 1154–55 (S.D. Fla. 2025) (citation omitted), *appeal dismissed*, 2026 WL 810430 (11th Cir. Mar. 24, 2026) (per curiam).  A statement is defamatory *per se* when "considered alone without innuendo," it "(1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to

subject a person to hatred, distrust, ridicule, contempt[,] or disgrace, or (4) to injure a person in his trade or profession." *See Mac Isaac*, 557 F. Supp. 3d at 1258 (citations omitted). Statements that are defamatory *per se* "are so obviously defamatory and damaging to reputation that the injurious nature of the statement is apparent from the words in the statement itself." *See id.* (cleaned up and citation omitted). In contrast, a publication is defamatory *per quod* when "the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic facts, such as innuendo." *See Block*, 789 F. Supp. 3d at 1155 (citation omitted). In a defamation *per quod* claim, the plaintiff "must allege and prove special damages," which are "actual, out of pocket losses which must be proven by specific evidence as to the time, cause[,] and amount." *See id.* (citations omitted).

Count XV appears to assert two instances of defamation: (1) statements allegedly made by Uriarte to Plaintiff's agent concerning Plaintiff's purported history of wrecking boats; and (2) statements allegedly made to East Coast Marine and other local mechanics advising them not to work on the Vessel. *See* FAC ¶¶ 476–82. The FAC fails to plausibility state a defamation claim in both instances.

As to the first instance of defamation, Count XV alleges that "[o]n or about August 14, 2024, Uriarte made public statements to an agent of [Plaintiff's] that [Plaintiff] had a history of 'wrecking numerous boats' and/or that [Plaintiff] had wrecked the subject Vessel as well." *Id.* ¶ 476. The FAC does not specify whether Count XV proceeds under a theory of defamation *per se* or *per quod*. Nevertheless, Uriarte's alleged statements as pled do not plainly fall within the recognized categories of defamation *per se* and are not "so obviously defamatory and damaging to [Plaintiff's] reputation" as to give "rise to an absolute presumption both of malice and damage." *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (cleaned up and

22

citations omitted).

To the extent Plaintiff intends to assert a claim of defamation *per quod* with respect to the first instance of defamation, the FAC likewise fails to state a claim as Plaintiff does not plausibly allege special damages.  Instead, Plaintiff alleges that he "suffered direct and/or indirect damages as a result of . . . Defendants' breach in amounts to be shown at trial."  *See* FAC ¶ 482.  Such a conclusory allegation of damages is insufficient to plead the "actual, out of pocket losses" required in a defamation *per quod* claim.  *See Block*, 789 F. Supp. 3d at 1155 (citation omitted); *see also Anderson v. Smith*, No. 3:19-CV-222-J-20JRK, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020) (dismissing a libel *per quod* claim when the plaintiff failed to "plead any special damages in relation to the defamatory publication" beyond a conclusory claim of damages (citations omitted)).  Lastly, while Count XV is asserted against both Uriarte and "Blackwater," the FAC does not allege a basis for imputing Uriarte's alleged statements to any Blackwater entity.  *See* FAC at 68.

Turning to the second instance of defamation, Count XV alleges that "[u]pon information and belief, individually or in concert, Uriarte and Plantation Boat Mart contacted East Coast Marine, and other local mechanics, and advised them against working on or providing services to [Plaintiff's] Vessel."  *Id.* ¶ 478.  As discussed above, the FAC's "Factual Background" section alleges that East Coast Marine was informed that Plaintiff was involved "in some form of improper conduct (i.e., insurance fraud)" and that "other mechanics in the area" refused to work on the Vessel "due to information that they had received."  *See id.* ¶¶ 184, 186.

While pleading upon information and belief is permissible, Plaintiff "is still required to allege . . . the factual basis upon which the information and belief was founded."  *See Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1329 (S.D. Fla. 2012).  As pled, Count XV fails to allege which Plantation Defendant purportedly made the statements, how Uriarte's alleged conduct may

be imputed to the remaining Blackwater Defendants, or when the statements were made. *See id.* at 1328 ("In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." (cleaned up and citation omitted)).  Further compounding the lack of clarity, Count XV is entitled "Slander & Libel," yet the FAC does not establish whether the alleged statements made to East Coast Marine and the local mechanics were spoken or written. *See Mac Isaac*, 557 F. Supp. 3d at 1257 n.4 ("A claim for slander is confined to defamatory spoken words, whereas a claim for libel refers to defamatory written statements." (citation omitted)).  These deficiencies are emblematic of the lack of clarity throughout the FAC and must be addressed should Plaintiff choose to replead Count XV.

## IV.    CONCLUSION

Accordingly, UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion to Dismiss Plaintiff's First Amended Complaint and to Strike Punitive Damages (ECF No. 126), the Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 134), and the Notice of Joinder in Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (ECF No. 138) are GRANTED.  Plaintiff's First Amended Complaint (ECF No. 113) is DISMISSED WITHOUT PREJUDICE.  The Clerk of Court is INSTRUCTED to CLOSE this case.  All pending motions are DENIED AS MOOT.  Should Plaintiff choose to file an amended complaint, he may do so within twenty-one (21) days of the date of this Order.

DONE AND ORDERED in Chambers at Miami, Florida, on this __2nd__ day of June, 2026.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c:  All counsel of record